UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

OCT 19 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-623-GWU

BARBARA A. SOUTHARD,                                              PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.   If there is, we then examine:   (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff,  Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Southard

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Southard

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Barbara A. Southard, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of status post Tetralogy of Fallot repair, mild to moderate atherosclerotic disease, gastroesophageal reflux disease, and a history of mild congestive heart failure. (Tr. 15).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Southard retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 17-20).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to medium level exertion, could only occasionally climb ladders/ropes/scaffolds, and needed to avoid exposure to temperature extremes and to workplace hazards such as unprotected heights and moving machinery. (Tr. 302).

7

Southard

The VE responded that there were jobs such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 302-3).

On appeal, this Court must determine whether the hypothetical question is supported by substantial evidence, and that it fairly depicts the plaintiff's condition.

Mrs. Southard alleged disability due to a heart condition, and also described difficulty using her left arm and hand. (Tr. 66, 291-2, 295). Her heart condition had resulted in open heart surgery when she was 10 years old, but she had been able to work at a laundromat from 1989 to 2001. (Tr. 291). Her condition had worsened, and she attempted jobs in 2002, but did not last even three months. (Tr. 290). She had been told there was a hole in her heart and blood flowing into the hole caused her to have blackouts. (Tr. 292). However, she testified that since she had been put back on medication, she had not had blackouts for a year prior to the June 16, 2004 administrative hearing. (Tr. 295-6). She was still afraid to drive, however. (Tr. 296). She been told that she was a future candidate for heart transplant but, that due to the way her childhood surgery had been performed, she could not have more open heart surgery. (Tr. 295).

Medical records prior to the plaintiff's alleged onset date of June 4, 2002 indicate that she was seen fairly regularly by cardiologists between 1989 and 1996, with a cardiac catheterization in August,1994 showing a "congenital anatomy status

8

post repair of Tetralogy of Fallot with closure of VSD and repair of infundibulum" and "congenital anatomy ASD with redundant left anterior descending artery." (Tr. 166-8). The cardiologist, Dr. S. Chatterjee, noted that her chest pain put her in Functional Class II. (Id.). Functional Class II is defined by the New York Heart Association (NYHA) as representing an individual with slight limitation of physical activity, who is comfortable at rest and in the performance of ordinary, light, daily activities, although greater than ordinary physical activity such as heavy physical exertion would result in fatigue, palpitations, dyspnea, or anginal pain. American Medical Association, Guides to the Evaluation of Permanent Impairment (Fifth Edition 2001), p. 26. As previously noted, the plaintiff was able to work at this functional classification until 2001.

Medical evidence from after the alleged onset date shows that Mrs. Southard was admitted to Manchester Memorial Hospital on June 4, 2002 with a complaint of "near syncope." (Tr. 171). She had been off her medication for five years because of finances. An EKG showed normal sinus rhythm, left ventricular hypertrophy, and a bifasciular block, while laboratory studies such as serial cardiac enzymes were all negative. (Id.). An echocardiogram by Dr. Ashwini Anand, a cardiologist, showed mild left ventricular hypokinesis with an ejection fraction of 40 to 45 percent. (Tr. 175). The attending physician, Dr. Anita Cornett, restarted the plaintiff on Lopressor and daily aspirin, and Mrs. Southard was discharged in stable condition with no

complaints of chest pain or palpitations. (Tr. 171). Subsequently, Dr. Anand performed a nuclear stress thallium treadmill test of the plaintiff in July, 2002 which showed a septal infarct with mild ischemia, and an ejection fraction of 48 percent. (Tr. 201).

The plaintiff followed up with Dr. Anand in December, 2002, complaining of occasional chest pain, shortness of breath, and left arm pain with movement, but denied increasing palpitations. (Tr. 195). Dr. Anand's physical examination was essentially normal, and he commented that Mrs. Southard appeared to be doing well from a cardiac standpoint. He advised her on the importance of risk factor modification, including diet and exercise, and strongly encouraged abstinence from all tobacco products. (Id.). On Mrs. Southard's next visit to the same clinic, she was seen by another physician, Dr. Suresh Rekhraj, and complained of worsening shortness of breath, palpitations, and lower extremity edema. (Tr. 193). Dr. Rekhraj ordered an echocardiogram, which showed reduced systolic function, an ejection fraction of 35 percent, normal aortic valve morphology, mild pulmonary valve insufficiency, and a trace of tricuspid regurgitation. (Tr. 199). On follow-up, the plaintiff was seen by a third physician, Dr. Zakariah QaQa, and with a chief complaint of "smothering," and lower extremity edema, although she also had occasional midsternal pain. (Tr. 190). Dr. QaQa's exam showed that the plaintiff was in no apparent distress, although she had mildly distended neck veins, her lungs were

10

clear, and her extremities showed no cyanosis, clubbing, or edema. (Tr. 190-1). He also made findings of right upper quadrant tenderness,[1] and left hip pain, for which he planned to obtain an x-ray of the hip, although there is no indication that this was ever performed. (Id.). Dr. QaQa's assessment was "left ventricular systolic heart failure," coronary artery disease, status post ASD repair, a history of syncope and "congestive heart failure, NYHA class III." (Tr. 191). A Class III NYHA impairment represents "marked limitation of physical activity; is comfortable at rest; ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain." Guides, supra, p. 26. Dr. QaQa added the medication Cozaar, and again warned the plaintiff to abstain from using tobacco products and follow a low-fat, low-sodium, low-cholesterol diet and a regular exercise program. (Id.).

At this point, a physical residual functional capacity assessment was completed by some source at Dr. Anand's clinic. The printed name on the form was that of Dr. QaQa, but as counsel for the plaintiff stated at the administrative hearing, the signature clearly appears to be Dr. Anand's. (Tr. 181, 294). The assessment limits Mrs. Southard to less than full-time standing and sitting, in addition to having numerous additional limitations based on her NYHA class III heart impairment, with a 35 percent ejection fraction on her echocardiogram along with dyspnea, edema,

---

[1]Gallstones were found on an ultrasound in March, 2004. (Tr. 261).

11

Southard

and orthopnea. (Tr. 176-81). Clearly, if this opinion were to be given controlling weight, there would be no jobs the plaintiff could perform.

However, the ALJ rejected the assessment on the grounds that "the record fails to reflect treatment records" (presumably from Dr. QaQa), and that "the signature on this document does not appear to be of the same style as is contained in the remainder of the document." (Tr. 14, 16).[2] The ALJ also cited the inconsistency of the restrictions with the claimant's treatment history with Dr. Anand and Dr. Ramchandra, another cardiologist at the same clinic who subsequently treated the plaintiff. (Tr. 16). The ALJ accepted the residual functional capacity assessments of state agency reviewing physicians James Ross and J. Baez-Garcia (Tr. 204-18), who had completed their assessment forms previously. (Id.). The plaintiff objects that it was improper to reject the opinion of a treating source such as Dr. Anand in favor of non-examining sources who did not review the treating source's opinion and specifically give reasons for disagreeing with it. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

While the ALJ would have a compelling argument if Dr. QaQa, apparently a one-time examiner, had signed the functional capacity assessment, it had actually been signed by Dr. Anand. Dr. Anand had performed a cardiac catheterization and

---

[2]The handwriting on the form is different from Dr. Anand's signature, but by the same token, few physicians physically type the office notes or letters on which the Commissioner routinely relies. A signature is ordinarily considered sufficient.

Southard

a nuclear stress test in 2002, had performed an initial office evaluation of the plaintiff in December, 2002, and may have performed the echocardiogram in May, 2003, although there is also another physician's name on this report.  (Tr. 199). In any case, he oversaw the procedure. As a treating source who had access to more recent objective testing than the non-examining reviewers, Dr. Anand was better placed to give an opinion on Mrs. Southard's current level of functioning, and the plaintiff's citation to <u>Barker</u> is apposite.  It is significant that the May 5, 2003 catheterization showed an ejection fraction of only 35%, which is less than assumed by the state agency reviewers. (Tr. 205, 218). It was also considered to place Mrs. Southard in a lower class of functioning per NYHA standards.

Because there is evidence from Dr. Ramachandra, another treating source at Dr. Anand's clinic, that the plaintiff's condition subsequently improved, at least subjectively (Tr. 184-5, 254) and some evidence that she continued to smoke against medical advice (Tr. 184), an award of benefits is not indicated.

The case will be remanded for further consideration.

This the ___1·9___ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13